COMMONWEALTH vs. DAVID J. SAULNIER.

No. 12-P-931.

Middlesex. September 23, 2013. - December 6, 2013.

Present: MEADE, MILKEY, & HANLON, JJ.

*Motor Vehicle,* Operating under the influence. *Intoxication. Evidence,* Intoxica-
tion, Opinion. *Witness,* Police officer. *Practice, Criminal,* Witness, Waiver
of trial by jury, Bifurcated trial. *Waiver.*

At the jury-waived trial of a criminal complaint charging operating a motor
vehicle while under the influence of intoxicating liquor, no substantial risk
of a miscarriage of justice arose from the erroneous admission of a police
officer's testimony about his opinion of the defendant's ability to drive
safely and the cause of the defendant's impairment, i.e., one of the ultimate
issues in the case, where, given that the impermissible portion of the offi-
cer's testimony was very brief, and the Commonwealth's case was very
strong, it was highly unlikely that the officer's opinion on the ultimate issue
was a decisive factor in the judge's finding. [604-607]
This court concluded that error, if any, in a judge's failure to conduct an
entirely new plea colloquy at the outset of the separate, subsequent offense
portion (i.e., second phase) of a two-step bifurcated criminal trial proceed-
ing in which the defendant waived his right to a jury was harmless beyond
a reasonable doubt, where the procedure that took place was adequate to
safeguard the defendant's rights, in that the initial plea colloquy on the
underlying offense portion of the trial was complete, and at the end of the
first phase of trial, the judge inquired about the second phase and the jury
waiver, in response to which inquiry counsel explicitly waived the jury for
that second part of the trial. [608-611]

COMPLAINT received and sworn to in the Waltham Division of
the District Court Department on August 24, 2010.

The case was heard by *Tobin N. Harvey,* J.

*Thomas J. Chirokas* for the defendant.

*Moire V. Dobransky,* Assistant District Attorney, for the
Commonwealth.

HANLON, J. After a jury-waived trial in the District Court, the
defendant was convicted of operating a motor vehicle while

under the influence of intoxicating liquor, fourth offense.[1] On appeal, he argues that the trial judge permitted a police officer to give improper opinion testimony on the ultimate issue, and that his conviction should be vacated because he did not waive his right to a jury trial on the subsequent offense portion of the trial. For the reasons that follow, we affirm.

*Background.* The judge heard the following facts. On August 23, 2010, at approximately 7 P.M., the defendant was involved in a motor vehicle accident on Main Street in Waltham. A witness testified that she saw the defendant drive a vehicle away from Gordon's Liquor Store and then travel diagonally across two lanes of traffic and into her lane, where it "smashed into the driver's side headlight area of [her] car." Afterwards, her car was inoperable. The witness's boyfriend, who had been driving her car, called the police; the witness saw the defendant "rocking back and forth," saying, "I'm so fucked, I'm so fucked."

Waltham police Officer Anthony Scichilone responded to the scene and observed the witness's motor vehicle stopped in traffic. He spoke with the defendant, who told him that the witness's car had struck him; however, according to the officer, the witness's car was in the proper lane. During the conversation, the officer noticed that the defendant had "a moderate odor of alcohol coming from his breath, his eyes were bloodshot and glassy, he had slurred speech, and to me he looked impaired. . . . He was unsteady on his feet and when he approached the sidewalk he stumbled off the sidewalk." Believing that the defendant was "impaired and intoxicated," Scichilone placed him under arrest. Thomas Moran, a Waltham police sergeant who booked the defendant, essentially corroborated Scichilone's testimony regarding the defendant's sobriety.

*Improper opinion testimony.* The defendant first argues that Sergeant Moran erroneously was permitted to testify to his opinion that the defendant's ability to operate a motor vehicle safely had been impaired due to the consumption of alcohol. Moran first testified that the defendant had trouble spelling his own name, was confused about whether he lived in an apart-

---

[1]The Commonwealth moved to amend the complaint to reduce the fifth offense charge to a fourth offense, and the motion was allowed.

ment, misspelled his mother's name, and incorrectly stated his zip code. A series of questions from the prosecutor followed:

> THE PROSECUTOR: "And after those observations that you made about his physical appearance, the smell, and the statements, did you come to any conclusions about his level of sobriety?"
>
> THE WITNESS: "I did."
>
> THE PROSECUTOR: "And what conclusion did you come to?"
>
> THE WITNESS: "I —"
>
> DEFENSE COUNSEL: "Objection, Your Honor."
>
> THE COURT: "I'll sustain it to the form of the question as opposed to a conclusion . . . ."
>
> THE PROSECUTOR: "What opinion did you form?"
>
> THE WITNESS: "I formed the opinion that he was intoxicated and that his ability to safely operate a motor vehicle had been impaired due to the consumption of an alcoholic beverage."
>
> DEFENSE COUNSEL: "Objection, Your Honor."
>
> THE COURT: "Well, [even to] the rendering of the opinion, right, noted and overruled."

Counsel did not clarify the objection, and the trial proceeded.

The prosecutor's question was proper: the officer's opinion about the defendant's level of sobriety was admissible. The officer's additional response, including his opinion about the defendant's ability to drive safely and the cause of any impairment, was not admissible, because, in so responding, the officer spoke directly to one of the ultimate issues in the case. See *Commonwealth* v. *Jones*, 464 Mass. 16, 17 n.1 (2012) ("In a prosecution for operating a motor vehicle while under the influence of alcohol, lay witnesses, including police officers, may not opine as to the ultimate question whether the defendant was

operating while under the influence, but they may testify to his apparent intoxication"); *Commonwealth* v. *Canty*, 466 Mass. 535, 544 (2013) ("[A] lay witness in a case charging operation of a motor vehicle while under the influence of alcohol may offer his opinion regarding a defendant's level of sobriety or intoxication but may not opine whether a defendant operated a motor vehicle under the influence of alcohol or whether the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely"). See also *Commonwealth* v. *Acosta*, 81 Mass. App. Ct. 836, 842 n.10 (2012) ("Opinion testimony may 'touch' on an ultimate issue in the case, *Commonwealth* v. *Cruz*, 413 Mass. 686, 690 [1992]; *Commonwealth* v. *Cyr*, 425 Mass. 89, 96 [1997], if couched in appropriate language, but an expert cannot directly speak to, or express a point-of-view about, the issue of the defendant's guilt or innocence. *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579 [1998]. *Commonwealth* v. *Grisset*, 66 Mass. App. Ct. 454, 457-458 [2006]").

In this case, however, defense counsel did not explain to the judge the basis for her objection, and looking at the context, it is clear that the judge understood the objection to go to the form of the question and to the fact that the officer's answer was harmful to the defendant.[2] If, in fact, counsel intended to raise the issue of the officer's testimony addressing one of the ultimate issues, she should have brought that issue to the judge's attention in order to have it addressed at the time. See *Commonwealth* v. *Marshall*, 434 Mass. 358, 365 (2001). "As a general matter, timely objection at trial is required to preserve a claim of error in the admission of evidence." *Commonwealth* v. *Lenane*, 80 Mass. App. Ct. 14, 19 (2011). "The purpose of requiring an objection is to afford the trial judge an opportunity to act promptly to remove from the [fact finder's] consideration evidence which has no place in the trial." *Ibid.*, quoting from *Abraham* v. *Woburn*, 383 Mass. 724, 726 n.1 (1981). Nor did counsel move to strike the improper portion of the answer. Cf. *Commonwealth* v. *Stewart*, 450 Mass. 25, 36 (2007). "Generally, we do not consider issues which were not preserved at trial." *Com-*

---

[2]Defense counsel had objected earlier when Scichilone was asked to give an opinion about the defendant's sobriety.

*monwealth* v. *Young*, 401 Mass. 390, 404 (1987), citing *Commonwealth* v. *Marchionda*, 385 Mass. 238, 242 (1982). Unpreserved claims of error are reviewed only to determine if they created a "substantial risk of miscarriage of justice." *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). See *Commonwealth* v. *Lennon*, 399 Mass. 443, 448 n.6 (1987); *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

We are persuaded that there was no substantial risk of a miscarriage of justice here. The impermissible portion of the officer's testimony was very brief, and the Commonwealth's case was very strong. In our view, it is highly unlikely that the booking sergeant's opinion on the ultimate issue was a decisive factor in the judge's finding. "A trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as a factfinder." *Commonwealth* v. *Batista*, 53 Mass. App. Ct. 642, 648 (2002). See *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 580 (1998).

*Jury waiver.* a. *Background.* The defendant next argues that the judge's failure to conduct a second jury waiver colloquy or to procure a second written waiver from the defendant for the subsequent offense phase of the trial constitutes reversible error. Before the trial on the underlying offense began, the judge conducted a thorough colloquy with the defendant, explaining to him his right to have his case tried by a jury. In the colloquy, the judge began with the words, "I understand you wish to give up your absolute right to have a jury trial *in this case*" (emphasis added). The defendant submitted a written waiver, giving up his right to a jury trial. The waiver carried the docket number of the complaint. The complaint itself listed only one criminal charge along with two civil motor vehicle infractions.

Later that same day, after the judge found the defendant guilty of the underlying offense, the judge said to defense counsel, "And how are we going to proceed next?" Counsel responded, "We're going to do a bifurcated trial." The judge then inquired, "And satisfied with the prior waiver with the gentleman?" and counsel answered, "[Y]es." What followed, the evidentiary portion of the subsequent offense phase of the trial, occupies six pages of transcript. The arresting officer was recalled

to the witness stand and asked to identify the defendant. The prosecutor then offered five exhibits, including a certified copy of a prior conviction record, asking to have it marked as an exhibit with a number.[3] The judge, stressing that this part of the trial was a "separate proceeding" from the trial on the underlying offense, explained that the document would be marked as an exhibit with a letter, rather than a number. There was no objection. The next exhibit, consisting of "certified records from the Registry of Motor Vehicles," was admitted after a brief argument on its admissibility on the ground that it violated the defendant's right of confrontation under the Sixth Amendment to the United States Constitution. See *Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305 (2009). Two more exhibits, certified copies of convictions under seal, from the Framingham and Waltham Divisions of the District Court Department, respectively, were admitted over the same objection. The final exhibit, a certified copy of a conviction from Florida, was also admitted over objection, along with a copy of the Florida statute governing operating while under the influence.

The judge then offered to take a recess so that defense counsel could consult with her client. After a time, when defense counsel stated that she was ready, both the prosecutor and defense counsel gave closing arguments. Defense counsel reiterated her Sixth Amendment objections and also noted what she alleged were various infirmities in the authentication of the documents offered. The judge responded with questions, and considerable exchange took place among both counsel and the judge, most of it relating to the admissibility of the documents. The judge then stated that he was satisfied that the Commonwealth had proved "beyond a reasonable doubt three prior admissions to or convictions for operating under the influence of alcohol or comparable offenses."

b. *Discussion.* "Under G. L. c. 278, § 11A, a defendant 'charged with a crime for which more severe punishment is provided for second and subsequent offenses' who pleads guilty or is found guilty after trial, 'shall be further inquired of for a plea of guilty or not guilty to that portion of the complaint . . . alleging that the crime charged is a second or subsequent of-

---

[3]None of the exhibits is included in the record before this court, and the defendant raises no issue as to any of them.

fense' before sentence is imposed. If the defendant pleads not guilty, he is 'entitled to a trial by jury of the issue of conviction of a prior offense . . . [or] may waive trial by jury.' " *Commonwealth* v. *Pelletier*, 449 Mass. 392, 396 (2007). The statute states specifically that the trial on the issue of conviction of a prior offense is "subject to all the provisions of law governing criminal trials." See *Commonwealth* v. *Kulesa*, 455 Mass. 447, 457 (2009). "The statute, in other words, requires a defendant to be tried in a two-step, bifurcated procedure: 'first, on the underlying substantive crime and, then, in a separate proceeding, on that component of the charge referring to the crime as a second or subsequent offense.' " *Commonwealth* v. *Pelletier*, 449 Mass. 392, 396 (2007), quoting from *Commonwealth* v. *Miranda*, 441 Mass. 783, 788 (2004). The same bifurcated proceeding takes place "when a defendant pleads guilty to the underlying offense, the difference being that the first step is a plea hearing, rather than a trial." *Commonwealth* v. *Pelletier*, *supra*.

The issue here is what is required of the judge when the defendant wishes a trial in both phases of the bifurcated proceeding, but waives his right to a jury. There are no reported cases directly on point. We are guided, however, by the reasoning of the Supreme Judicial Court in *Commonwealth* v. *Pelletier*, *supra*, and by our own analysis in *Commonwealth* v. *Hernandez*, 42 Mass. App. Ct. 780 (1997). In *Commonwealth* v. *Pelletier*, *supra* at 397-398, the court stated, "Where a defendant is pleading guilty, we do not read the statute as requiring that a judge conduct an entirely new plea colloquy during the second step of the bifurcated proceeding. The preliminary questioning conducted at the outset of the plea hearing on the underlying offense need not be repeated, so long as the judge makes clear, and the defendant understands, that the preliminary questioning applies equally to the plea on the subsequent offense portion of the charge as well."

In *Commonwealth* v. *Hernandez*, *supra*, there were in fact two separate trials, on two separate complaints, where each complaint charged the defendant with possession with intent to distribute a class A substance and with distribution of a class A substance within 1,000 feet of a school. See *id.* at 781. Under

all the circumstances of that case,[4] we were satisfied that one colloquy at the outset was adequate to preserve the defendant's rights. *Id.* at 786 ("It is clear from this record that the colloquy between the judge and the defendant referred to the jury waivers in *both* trials"). As we observed in *Hernandez*, to require a colloquy and written waiver prior to each proceeding "would elevate form over substance." *Ibid.* In the present case, there was one trial and one charge, split into two components only because the prior offenses related solely to the penalty phase of the trial.

We also have in mind that the initial colloquy was complete and the defendant does not challenge it. At the end of the first phase of the trial, the judge inquired about the second phase and the jury waiver. In response, counsel explicitly waived the jury for that second part of the trial. We are satisfied that this procedure was adequate to safeguard the defendant's rights in this case.[5]

Moreover, the defendant here did not file a motion for a new trial and presented nothing, in affidavit form or otherwise, to indicate that he did not understand that he had a right to a jury trial on the subsequent offense portion of the charge, or that he would have chosen such a trial, or what he might have hoped to accomplish in such a trial. It is difficult to see that a jury trial might have made a difference for him. The nature of the subsequent offense portion of the trial that took place, which was largely a legal argument about the rules of evidence and the defendant's Sixth Amendment right to confrontation, would not have lent itself to credibility or other arguments one would expect to make to a jury. Therefore, even if there was error, we are persuaded that it was harmless beyond a reasonable doubt. See *Commonwealth* v. *Nwachukwu*, 65 Mass. App. Ct. 112, 118-119 (2005).

The published cases cited by the defendant do not help him.

---

[4] One trial immediately followed the other, and the first trial was very short. *Id.* at 786.

[5] In the future, the better practice would be to require an explicit acknowledgment on the record from the defendant that he understands that he has a right to a trial by jury in each part of the bifurcated trial, and that he understands that he is waiving that jury trial right for both parts.

In *Commonwealth* v. *Dussault*, 71 Mass. App. Ct. 542, 543 (2008), in the initial phase of the trial, a *jury* found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor. Thereafter, the judge failed to conduct a jury waiver colloquy or to procure a written waiver from the defendant for the subsequent offense portion of the trial, which was to be jury-waived. *Id.* at 547. In *Commonwealth* v. *Zuzick*, 45 Mass. App. Ct. 71, 73 (1998), we determined that there was "no trial, either before a jury or the judge on [the subsequent offense] portion of the complaint." Neither *Ciummei* v. *Commonwealth*, 378 Mass. 504, 504-505 (1979), nor *Commonwealth* v. *Pavao*, 423 Mass. 798, 801-802 (1996), is applicable to the facts of this case, as neither involved a so-called bifurcated trial, and in neither case was there any colloquy at all.

*Judgment affirmed.*